NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**10-951**

STATE OF LOUISIANA

VERSUS

RONALD S. MARTIN

\**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 77727
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\**********

**JOHN D. SAUNDERS
JUDGE**

\**********

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED, WITH INSTRUCTIONS.**

Hon. James David Caldwell
Attorney General
P. O. Box 94005
Baton Rouge, LA 70804-9005
(225) 326-6000
Counsel for Plaintiff Appellee:
State of Louisiana

**G. Paul Marx**
**Attorney at Law**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 237-2537**
**Counsel for Defendant Appellant:**
**Ronald S. Martin**

**Terri R. Lacy**
**Assistant Attorney General**
**P. O. Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6200**
**Counsel for Plaintiff Appellee:**
**State of Louisiana**

**Ronald S. Martin**
**IN PROPER PERSON**
**A.V.C. C-3, B-1**
**1630 Prison Road**
**Cottonport,, LA 71327**

**SAUNDERS, Judge.**

Defendant, Ronald S. Martin, was convicted of manslaughter, in violation of La.R.S. 14:31, for the homicide of his ten-week-old daughter. Thereafter, the State charged Defendant, via a habitual offender bill of information, with being a fourth felony offender, in violation of La.R.S. 15:529.1.

Defendant moved to quash the habitual offender bill on the basis that the predicate offenses were either cleansed or not properly *Boykinized*. Setting forth written reasons for its ruling, the trial court denied Defendant's motion on March 16, 2010.

After considering the evidence presented at the habitual offender hearing, the sentencing court determined that Defendant was a fourth felony offender and, noting it was tantamount to a life sentence, imposed the minimum possible sentence: forty years at hard labor without benefit of probation, parole, or suspension of sentence.

After sentencing, Defendant, *pro se*, filed a motion to reconsider sentence. In his pleading, Defendant asserted that, though it was the minimum allowable under law, his sentence was excessive. Defendant asked the trial court to amend his sentence in a downward departure from the statutory minimum. Defendant urged that he had never before been convicted or charged with a violent offense, that he always sought self-improvement, that his daughter's death had been an accident, and that he had no intent to cause the baby's death. Defendant filed a second motion to reconsider sentence through counsel. The counsel-filed motion also requested a downward departure from the statutory minimum allowable penalty and asserted Defendant's factual innocence as the basis for the departure. The trial court denied both motions for reconsideration.

Defendant now appeals his sentence. We affirm Defendant's sentence.

**STATEMENT OF FACTS:**

Following a bench trial, the trial court found Defendant guilty of manslaughter

and set forth the following reasons for its decision:

> [T]he mother was apparently on an errand to -- for the father, Mr. Martin, in Oakdale and received this phone call while she was in the car with some friends and became upset because of the phone call and told them that she had to go home because something had happened. Now, that's circumstantial evidence that what had happened was injury to her child. The mother jumps out of the car when they get to where her car was parked, before it even stopped, gets in her car and flies off to Pitkin. What does this concerned mother do for a woman who is upset about her child, presumably, because of what she had been told on the phone. We don't know what that was, but based on her observations -- the observations, her demeanor, she's upset. What does she do? She goes in and makes arrangements to take her child to -- immediately to take her child to the doctor or the hospital in Beauregard Parish. But she also proceeds to concoct this story with her boyfriend, father of the child, to where she's the one who dropped the child while bathing it. . . . But, they get to the hospital. Mr. Martin doesn't go, I do find that unusual. Then the injuries are diagnosed as so serious that it has to be transported to Shreveport. They go to Shreveport, Mr. Martin goes with them up there, where they take the statement from him that corroborates the statement given by the mother at the hospital two days before that she caused the injuries to the child. Then the child, of course, dies. Then we have the unrecorded statement by the Vernon Parish deputies, investigators. . . . [T]hat statement was taken before two deputies unrecorded where the defendant then says that he's the one who dropped the child on the edge of the tub, a distance of about a foot. The coroner gets the case -- not the coroner, the expert here, the forensic pathologist, the person who does the autopsy, and that's -- the autopsy reveals, of course, the fracture he described which is a severe fracture. The photographs verify that. . . . I thought I understood him to say then that a fall couldn't have caused this injury, that it had to be some force applied to the side of the head. . . . [W]hat I have to determine based on all the facts presented in this case whether it was homicide or not. Now, after the autopsy I believe the defendant was arrested and charged with -- presented to a grand jury and they charged him with murder[,] and that's where we are today. But in -- the Court in considering all of the evidence in this case, the defendant's conduct is what the Court -- is the only thing the Court has to focus on, not really the only thing, but it's the main thing the Court focuses on in arriving at what happened to this child[,] and that's circumstantial evidence is what I'm getting at. Circumstantial evidence is what I have to deal with here. I believe the circumstantial evidence that I put the most emphasis on is this agreement that was made between the two parents for her to go to the

2

hospital and tell the doctors that she had caused this injury. I can -- there's no other reasonable explanation of that than to find beyond a reasonable doubt that this was done to protect the actual perpetrator, as it turned out later to be Ron Martin, and I do not believe that they would have concocted such a story if things had happened the way Mr. Martin said they happened when he gave his statement, supposedly [']fessing up to the -- to investigators. I simply do not believe that is the way the injuries to this child occurred.

The Court finds beyond a reasonable doubt that the defendant is guilty of manslaughter under 31 -- Revised Statute 31 . . . A (2) (a).

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find one error patent.

The trial court failed to properly advise Defendant of the prescriptive period for filing post-conviction relief. *See* La.Code Crim.P. art. 930.8. The transcript of sentencing indicates the trial court, referring to post-conviction relief, informed the Defendant that "You have . . . two years within which to file an application for post-conviction relief." Louisiana Code of Criminal Procedure Article 930.8 provides the defendant has two years after the conviction and sentence become final to seek post-conviction relief.

We find the advisement given by the trial court was insufficient. Accordingly, we direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

3

**ASSIGNMENTS OF ERROR NOS. 1 & 2:**

Defendant argues that there was insufficient evidence to support his habitual offender adjudication because the trial court erred in that the habitual offender proceeding was separately docketed from the trial and conviction in a separate docket number. According to Defendant, this bifurcation prejudiced the defense because there was insufficient evidence in the record upon which to determine the sentencing considerations relied upon by the trial court.

Defendant claims that none of the evidence, proceedings, or rulings from the docket number under which he was convicted of manslaughter were included in or appended to the record in the habitual offender docket number. Defendant maintains that sentencing is part of the offense from which the two proceedings arise. Defendant contends, therefore, that this court should consolidate the appeals arising from his manslaughter conviction: "The appeal should be consolidated with conviction and sentence in one single record."

Though Defendant does not raise this issue in his appeal, he notes that, at trial, he challenged the validity of the predicate offenses on the bases that he was not properly *Boykinized* and that the ten-year cleansing period prohibited the use of the convictions as predicate offenses. Although Defendant additionally points out that he raised the issue of excessive sentence with the trial court, his brief to this court does not urge this matter as an assignment of error.

The record is devoid of any attempt by Defendant to consolidate the cases in either the trial court or this court prior to the filing of his brief. Defendant's arguments in his motion to quash, at the habitual offender hearing, at sentencing, and in the motions to reconsider did not include any allegation that the bifurcation

4

prevented the sentencing judge, who was the same judge who presided over Defendant's bench trial, from having an adequate basis for imposing sentence.[1] Because Defendant failed to assert these arguments in the trial court, they will not be considered on appeal. La.Code Crim.P. arts. 841 and 881.2.

**DECREE:**

Defendant's sentence is affirmed. However, the trial court failed to properly inform Defendant of the prescriptive period of La.Code Crim.P. art. 930.8, and we direct the trial court to inform the Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings.

**AFFIRMED, WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules– Courts of Appeal, Rule 2–16.3.

---

[1]Notably, the first exhibit entered into evidence at Defendant's habitual offender hearing was the trial court's ruling finding Defendant guilty of manslaughter and the written reasons therefor.